The session is in Appeal 2008-1075, Srdarovic v. Advanced Medical. Mr. Sachs, good morning to you. Please proceed. May it please the Court that we preserve four minutes for rebuttal. You understand that when the yellow light goes on, you're burning your four minutes. I do, Your Honor. It's up to you. I'm not going to mind it for you. I do, Your Honor. Very well. Proceed. I want to start with three reasons why the deaths of the three professors, Professors Maurice, Missat, and Brosson, did not materially prejudice defendants' defense. The reasons are, first, the summary judgment record existence of all the evidence that Dr. Srdarovic needs to prove her adventureship claims, and more importantly, the summary judgment record existence of all of the evidence that defendants need to rebut those claims. Second is the moving papers below on the motion for summary judgment, because this motion changed significantly between the opening brief below by defendants and the reply brief. And third, what Dr. Srdarovic actually said about her interaction with these professors. Turning first to the required proof by Dr. Srdarovic, in an ordinary lachies case, when somebody comes in and says, I've been prejudiced by the delay, evidentiary prejudice, defendants usually will point to specific lost evidence or specific important witnesses and meet the requirements of this court in both the Myers-Asics case and the Myers-Brooks-Shue case that you point to some specific reason as to why you've been prejudiced. That's not the case here. In fact, it's just the opposite. What's happened in this case is Dr. Srdarovic, in her declaration, her opposition declaration below, demonstrated that she has full records, both direct and corroborative, and she is a bit of a pack rat, Your Honors, to meet her burden, including a diary, detailed research notes, contemporaneous highlighted publications of others. What does this have to do with the three witnesses who are no longer with us? What it has to do with, Your Honor, is she showed that she has all her evidence, including corroborative evidence, and that the delay hasn't caused their ability to look at that and cross-examine her about that. The question is, what about the three missing witnesses? Not what she has, but what no one has because the three people died. I agree with you, Your Honor. The question is whether that's material, and assessing whether that's material, Your Honor. The question is, what did they materially need to defend? And what they materially need to defend is to be able to examine Dr. Srdarovic  that either Dr. Trocadero or Dr. Les Brons did it earlier, and this is not a case where they contest, particularly on summary judgment, that they have all of their records. This is a situation where— Wait a minute. Wait a minute. As I understand it, the asserted prejudice here is that three people died. Not that records aren't available. Three people died who knew a lot about the events in question. And I understood your defense to be, well, it doesn't matter because they would have been on our side and we can get along without them. But we don't know whose side they would have been on because they're dead and no one could ask them. So it looks to me like it's highly prejudicial that they're all dead. Well, there's two or three levels of answer to that, Your Honor, with all respect. Let me ask a preliminary question. Sure. These documents and everything else that she says she had, did she include them, copies of them? She didn't include them, Your Honor, because the issue of evidentiary prejudice was barely raised in their moving papers. In their moving papers, they said the only thing they specifically pointed— My question is, the Seventh Circuit has had a ruling in this, but most courts do, that summary judgment is the time where you put up or shut up. And, however barely they may have argued it, it certainly would have helped your case on evidentiary prejudice if you had a lot of documents and you had put them all in and there were signed papers by some dead guy agreeing with your client. And my question is, was that kind of stuff filed? And I think your answer is no. Some of it was, some of it wasn't. But some of it was, no? Some of it wasn't. Now, with respect to the three professors, one, in their moving papers, and the reason why part of this wasn't addressed, was the only thing they mentioned in their moving papers below, which was the only thing we had the opportunity to respond to, was the recommendation letter by Professor Massan. The second point I would say, again, Your Honor, and it's not to avoid answering this, I'm going to get to the specifics of the three professors in a minute, is materiality. To be material in the defense, on summary judgment, without any examination of Dr. Sudarovic as to what she talked to these people about, and without any examination of how they really would defend, what they said, in terms of what was material, is they didn't contest that they had all the records to show their inventorship, they didn't contest that she had all of her records to show her inventorship, and that's what's material in an inventorship case and an equitable title case. And lastly, with respect to what Dr. Sudarovic said, I'm still having trouble following you here. She has some records, and their records are somewhere that can be found, and therefore the fact that the three of them are dead doesn't matter. I don't see how that follows. Your Honor, the question is, in a case like this, how do defendants, who are the inventors on the patent, defend against the claim that somebody else says I invented it? There's two ways they do it. They try to show that she didn't do what she said she did, and all of her records and she are here for them to examine on that, or they try to show that they, in fact, did what they are accredited with doing. But clearly you have three witnesses that were involved in the history. And from the other side's perspective, they're going to say, I need to take the depositions of those witnesses to see if perhaps she may have all the records in the world, and those witnesses may be able to blow holes right through them. Let me speak to the materiality of those three witnesses. But just follow me. Aren't they denied the opportunity to question those witnesses to see whether those witnesses undermine the documentary evidence you say she had? They are surely denied that opportunity, Your Honor. No question about it. The question is whether that's material. Isn't that the end of the argument? No. The issue is whether that lost opportunity is material. How can it not be material? There are four people who knew all the facts. Your client and three other guys, and the three other guys are dead. That's not true with respect to what Dr. Sedarevic said about her contacts with these people. With respect to two of them, they're barely relevant. With respect to Professor Maurice, all she said was in April of 1980 she had an extensive discussion with Professor Maurice, who was a renowned expert on corneal structure and healing. Let's take an example of a barely relevant witness. This is someone who wouldn't really matter. A witness gets called, gets on the witness stand, and says, Dr. Sedarevic said that the following happened. The witness says she's lying. Now, if it's barely relevant, and a trier of fact believes that she's untruthful, they're entitled to believe she's untruthful about everything else. And that seems to me, at a minimum, what they lost. The ability to say that she is being untruthful in some part of what she said. Maybe not in all, but in some part. And that's a big thing in a trial. Your Honor, I agree with you. But it seems to me that in a situation where somebody said, did Dr. Sedarevic say to you in 1980 what she said, the most that somebody could say is, I don't remember that. I don't think they could possibly, as a psychological matter, say the opposite. But I agree with your point. The question really is, this is a post hoc justification. It didn't appear in their opening briefs below. They didn't even know about these people. And I just want to, again, briefly touch upon, and then I want to go on to two other points. I want to briefly touch upon the nature of these witnesses. Professor Maurice won conversation, extensive, in April 1980, before even conception. Professor Bosson, the only contact with Professor Bosson on the record, is Dr. Sedarevic goes to him in 1980 and says, I hear you have a far UV laser in the chemistry department. Can I use it to do animal testing? And she's told, no, the chemistry department doesn't allow that. The most significant one... How do we know that's all that that professor knew? Well, we don't, Your Honor, because we're on a summary judgment pre any discovery record. The only way this even came up is because Dr. Sedarevic, in explaining to the district judge the full scope of what she did, included almost every single conversation she had in her diary. Yeah, but she implicated these three individuals, and they are not inconsequential. And you can make every proffer you want as to what they would or would not say, but the problem is the defendants are prejudiced if they don't have the opportunity to find out firsthand. They are prejudiced, Your Honor, no question about that. I do not believe they are materially prejudiced, but I think we've plowed this. So with respect, I want to go on briefly to unclean hands on summary judgment, and then, if I still have time, even more briefly to the unjust enrichment issue. The district court, we submit, made an error in denying the unclean hands as a bar to laches on summary judgment. And the error that the district court made is it said that the unclean hands had to have something to do with the delay in filing suit, and no question that the unclean hands had nothing to do with most of the delay between 1998 and 2006. We do not believe that's a correct statement of the law. We think that this court in Aukerman pointed out that the issue is the basic maximum of when one seeks to do equity, one seeks equity, one must do equity. And the record on summary judgment of the unclean hands here, from the hiding of the patent applications from Dr. Sedarevic, from the claiming Dr. Sedarevic's invention, from the fraud during the Trocadéro-L'Esperance interference, the fraud in connection. We don't have any of these facts before us in a way we can do anything with. Oh, Your Honor, yes you do. We can't let you testify that this is the right way to interpret all these complicated facts? Well, Your Honor, that actually is just our point. This was summary judgment before a single word of discovery. And for purposes of summary judgment without a single word of discovery, the evidence which we put in, which was admissible, which was not challenged as being admissible, about all of this unclean hands, it may be that Dr. Trocadéro can explain that he didn't hide things from Dr. Sedarevic. That may all be, but on summary judgment without a single bit of testimony, on that summary judgment record, we submit, Your Honor, that it was inappropriate not to grant Alachi's defense in the face of some unclean hands. What you seem to be saying is our evidence of their unclean hands was so strong that no rational fact finder could do other than accept it. No, Your Honor, I think it's the exact opposite. Since it is their burden on Alachi's defense, since it is their burden on Alachi's defense, I believe that it is still their burden to show that they are entitled to Alachi's notwithstanding what for purposes of summary judgment is an uncontradicted unclean hands record. I know I'm into my rebuttal time, so with the Court's permission, I'd like to reserve the rest of rebuttal. All right. Mr. Chin. May it please the Court. During Sedarevic's admitted, at a minimum, eight-year delay, three witnesses died to the evidentiary prejudice of defendants, and I would like to turn to the issue of prejudice first. Sedarevic herself identified three witnesses who had contemporaneous and first-hand knowledge. We know all this. You're just telling us things that have already been covered. Tell us something new and helpful. Sure. The materiality of these witnesses is particularly notable in view of what this Court has recognized in Woodland Trust and various other cases, that inventors are prone to convince themselves, after a long delay, of having conceived of an important invention. Isn't your best defense here that these are equitable judgments and to be made by a trial judge and reviewed very deferentially by an appellate panel and she had an extensive documentary record in front of her and she made the equitable calls and we shouldn't disturb them unless they're blatantly wrong? I think that's absolutely right. The standard of review is abuse of discretion. This is an equitable issue, and as this Court has treated with latches, with inequitable conduct, with preliminary injunctions, the standard of review of an equitable determination is abuse of discretion. Well, why isn't that your case, pure and simple? It absolutely is. I believe that the facts that we laid out on the issues of prejudice and unclean hands and delay all fall within the discretion of the court, of the district court judge, to have considered and evaluated the undisputed facts of their deaths and what Siderovic said that they did and knew. Those are undisputed facts, and based on those undisputed facts, it was within the Court's discretion. Now, there was a bit of an issue in the briefs about the standard of review. Siderovic asserts that it's de novo, and we assert that it's abuse of discretion. And I think that issue has been definitively resolved by this Court en banc in the Opperman v. Chady's case. That was a summary judgment case. We're quite familiar with the case. So based on the abuse of discretion standard, the prejudice from three witnesses who died, who are identified in Siderovic's Massen was identified in Siderovic's complaint under the section experts in the field credit Siderovic as the inventor. And all three of the deceased witnesses were identified in a section of Siderovic's declaration entitled conception of my invention. There is no dispute. It was well within the Court's discretion to take the undisputed facts of their knowledge and find that there is latches. And it's particularly relevant in the context of the Woodland Trust line of cases where we know, or as this Court has observed, putative inventors after a delay oftentimes are able to convince themselves and truly believe that they may have invented something. We may have said that, but I'm not sure there's any basis to say anything one way or the other. Who the devil knows what the percentage is of cases where inventors convince themselves of this or that or something else. It sounds like a rhetorical flourish that might have been better left out of an opinion. Perhaps, but that's what makes these three witnesses important. Because these three witnesses are the ones who could have reined in any temptation by Siderovic to believe, to convince herself that she's an inventor. Why are you worried about what they might have done to rein in what sounds like They clearly knew a lot of material facts, even by her account of things, so they were material. End of story. Why belabor the nitty-gritty little details? I think that that's absolutely right. They had knowledge of the material facts. Their testimony could have been inconsistent with Siderovic's story, but we will never know. And we're not able to obtain that part of the story. I'd like to address two other issues relating to prejudice that was raised by counsel for appellant. First of all, he asserted that there was a change in the brief somehow. And the record is quite clear that beginning with the second amended complaint, before the motion was ever filed, Dr. Masson was identified as a witness under the section experts in field credit Dr. Siderovic as the inventor. He was careful. He talked about the opening brief. The opening brief cited to the second amended complaint, and to Dr. Masson in particular. But it's undisputed in any event that all three witnesses died. He doesn't dispute that the point was raised in the briefing. He just said it wasn't prominent. It was mentioned quickly, near the back or something. But he doesn't say he was blindsided. So what's left that's a problem? Perhaps I should move on then to the final issue relating to prejudice. And that is the documents that supposedly can replace these three witnesses. 214 pages were cited by Siderovic in her briefs, in both the blue brief and the gray brief, as documents that can take the place of these witnesses. These documents are largely file histories and litigation files. Not a single page mentions Siderovic. I wouldn't think I would care if it was 2,000 pages of documents. If the guys who were involved are dead, I don't care what the documents say. You'll never be able to reconstruct what actually happened. Because documents can lie just like witnesses can lie. That's exactly right. And in responding to summary judgment, Siderovic came forward with these pages. Not a single one mentions Siderovic. Not a single one mentioned these three witnesses. And we just won't know what these three witnesses would have said. Mr. Chin, what does Mr. Mancinelli have to add here? I understand that. Mr. Mancinelli represents Dr. Lesperance. I do not. There is a common issue with respect to— But is there any disagreement between you and him in your response to the contentions made in this appeal by Mr. Sachs? We do share a similar view. The one cause of action that was asserted against both defendants, including Dr. Lesperance, was the unjust enrichment claim. And so you would have Dr. Lesperance's perspective on that if it's an issue. Yeah, but you two have conferred, I assume. Is there any daylight between the positions right down the line that the two of you have? We do agree. Entirely. Yes. I just wouldn't want to necessarily speak on behalf of Dr. Lesperance. I wouldn't ask you to speak on his behalf. I'm just trying to understand what we need to do to get the full story here, to get the full picture on the appellee's side. Perhaps I can turn to the issue of unclean hands. With respect to unclean hands, counsel for appellant argues that unclean hands should not be related to the delay. That is completely inconsistent with the only unclean hands argument that was raised below at page 1325 of the appendix. The sole basis for the unclean hands position that Siderovic raised before the district court was the allegation that, quote, defendants caused the delay by Siderovic in raising her claims and filing suit. That's a quote from page 1325, and that was the sole basis upon which unclean hands was asserted. So it seems quite curious today to argue that it should not be related to delay when, in fact, the only basis was the delay. Now, a lot of material was submitted to the district court, and perhaps Mr. Sachs might argue that somewhere in there there's something bad that defendants did that should justify denying the laches defense, or that would preclude the district court from exercising its discretion, perhaps. Well, he can't do it on rebuttal. If he hasn't done it in the brief and in his direct argument, he can't start in rebuttal. That's exactly right, and that's why we cited the Pandrel case in our red brief. The Pandrel case indicates that it's the responsibility of the appellant or the plaintiff below to identify the particular argument and to not throw a bunch of documents out there that might show that defendants are bad actors or have unclean hands, but it's the responsibility of the appellant or the plaintiff below on summary judgment to specifically identify the issues of fact and dispute and specifically identify why it would be an abuse of discretion for the district court to deny the laches motion. And the one issue that was identified was that defendants supposedly caused the delay. And that clearly is not a basis to deny the laches motion because we know by 1998 Siderovic knew of the patents. We knew by 1999... No, none of that's contested. The extent of the delay is clear. And so to the extent that it's not contested that nothing after 1999 done by defendants could have caused the delay, the sole basis upon which unclean hands was articulated to the district court below is not in dispute and not an excuse at all. All right. Anything further? Unless Your Honor has any questions, I think that pretty much wraps it up. Thank you. Mr. Mancellini, I don't want to truncate your time, but I think it's reasonable to ask you to limit any remarks you might make to anywhere where you disagree with anything Mr. Chin has said or perhaps if he made some major omission, you can fill in the gap. But otherwise, I'm not sure what you have to say to the court that would be helpful to us in deciding the case. Well, Your Honor, I'm solely addressing the issue of unjust enrichment, which was not addressed by Mr. Chin. And I am not in disagreement with anything that he says. It also wasn't addressed by Mr. Sachs, as I recall, so I don't think we have a response argument when we don't have a primary argument. Well, it was addressed in his briefs. Well, of course, and you addressed it in your briefs. So we'll leave that issue to the briefs. Very well, Your Honor. And now we'll hear a rebuttal from Mr. Sachs. You have just over three minutes. Three points, briefly. First, as this Court made clear in the Wadless and other cases, with respect to summary review of summary judgment, it's the NOVO review, not abusive discretion review. Second, with respect to the Woodland line of cases, they deal with the requirement of corroborative evidence to avoid this perhaps off-the-cuff remark that putative inventors are inclined to not remember things right. With respect to unclean hands, with all respect to Mr. Chin, Mr. Chin has mischaracterized our brief, which I have in my hands. Is it in our record? Well, it's the brief below, and it is in your record, yes. Well, we'll confer to see what was actually said. The document speaks for itself. We argue far more than on unclean hands. And with that, Your Honor, thank you very much for the Court's time. I have one minor question. When did the three of them die? What years? Between 2002 and 2004. And I take it that although Siderovic was aware of the claim at the time, she never got an affidavit or anything? Correct. All right. We thank all three counsel. We'll take the appeal under submission. All rise.